UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

UNITED STATES OF AMERICA

- against -

VON TUCKER,

Defendant.

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/20/08

~~AMENDED~~

**OPINION AND ORDER**

05 Cr. 711 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

Defendant Von Tucker has requested that this Court authorize a subpoena ordering the Bureau of Prisons to produce all recordings of telephone conversations involving each of the cooperating witnesses. The government has moved to quash the subpoena. For the reasons stated below, Tucker's request is granted, the subpoena is issued with certain modifications, and the government's motion is denied.[1]

## II.   BACKGROUND[2]

The government has stated its intention to call three cooperating witnesses to testify against Tucker. In connection with its obligation to disclose

---

[1]     The motion was denied in an oral ruling from the bench on January 25, 2008. The parties were informed that a written opinion would follow.

[2]     This Opinion assumes familiarity with the facts of the case. Only facts relevant to this issue are summarized here.

1

certain evidence, the government has provided Tucker with redacted excerpts of transcripts of one of the witness's telephone calls, and Tucker has stated that those transcripts indicate that the cooperating witness may have been promised inducements for his testimony. The cooperating witnesses are incarcerated, and Tucker has requested a subpoena under Rule 17 of the Federal Rules of Criminal Procedure for recordings of all calls made by cooperating witnesses while incarcerated (the "Recordings") so that he can gather information on possible inducements offered to those witnesses in exchange for their testimony. The government has disclosed that there are over forty-five hours of Recordings, and has moved to quash the subpoena on the ground that it exceeds the bounds of discovery permitted by the Federal Rules of Criminal Procedure.[3]

---

[3]     It is not immediately clear that the government has standing to object to Tucker's subpoena (which is directed toward the Bureau of Prisons). A party generally lacks standing to challenge a subpoena issued to a non-party absent a claim of privilege or a proprietary interest in the subpoenaed matter. *See United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995) (citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121 (2d Cir. 1975)); *In re Grand Jury Subpoena Duces Tecum Dated May 9, 1990*, 741 F. Supp. 1059, 1060 n.1 (S.D.N.Y. 1990), *aff'd*, 956 F.2d 1160 (2d Cir. 1992). Regardless, "it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)." *United States v. Weissman*, No. 01 Cr. 529, 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) (citation omitted). *Accord United States v. Coriaty*, No. 99 Cr. 1251, 2000 WL 1099920, at *6 n.4 (S.D.N.Y. Aug. 7, 2000).

2

## III.   APPLICABLE LAW

### A.   Criminal Discovery

To determine the proper scope of a Rule 17(c) subpoena, it is useful to examine the structure of discovery in criminal cases to determine where such subpoenas best fit. The government's ability to discover information is significantly broader than that of a defendant, although a defendant's rights are protected by certain constitutional guarantees.

### 1.   Investigation

The most obvious source of information for the prosecution is the investigatory arm of law enforcement. By the time the prosecution's attention is drawn to an individual, law enforcement has typically gathered substantial evidence relating to the alleged offense. The government's ability to gather evidence is further enhanced by the use of search and seizure, a mechanism not available to the defense.

Like the government, defendants can employ investigators to gather potential exculpatory evidence. However, an innocent defendant has no *a priori* knowledge of the accusations against which she must defend herself,[4] and thus

---

[4]     A defendant who has committed many crimes and does not know which the government has discovered is in a similar position, though he is perhaps somewhat less deserving of sympathy.

must rely on the government's disclosures to calculate how best to present a defense.

### 2. Grand Jury

Grand jury proceedings provide another significant avenue for the prosecution to gather evidence.[5] It is a "fundamental maxim" that the grand jury "'has a right to every man's evidence . . . .'"[6] Before the grand jury, prosecutors have wide latitude to compel testimony and obtain documentary evidence without the restrictions imposed by the Federal Rules of Evidence and out of the presence of the defendant and her counsel.

Unlike the prosecution, the defendant has little or no access to grand jury proceedings. A defendant may not even be aware of a grand jury investigation until it is complete. Further, the Federal Rules of Criminal Procedure require that grand jury proceedings be kept confidential.[7]

---

[5]    *See* John G. Douglass, *Balancing Hearsay and Criminal Discovery*, 68 Fordham L. Rev. 2097, 2147 (2000) (hereafter Douglass, *Balancing Hearsay*) ("In many federal prosecutions . . . the government does most of its 'discovery' in a grand jury investigation before the indictment is ever filed.").

[6]    *In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003) (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)).

[7]    *See* Fed. R. Crim. P. 6(e).

### 3.    **Constitutional Disclosure**

The Constitution requires the prosecution to produce certain material

to the defense. The most familiar requirement is the prosecution's obligation to

produce exculpatory evidence. In *Brady v. Maryland*, the Supreme Court held that

the government's failure to provide a defendant with exculpatory evidence in its

possession violated the defendant's constitutional rights.[8]  This obligation extends

to evidence that a defendant can use to impeach the government's witnesses.[9]

---

[8]    *See* 373 U.S. 83, 87 (1963); *see also United States v. Agurs*, 427 U.S.
97, 111-13 (1976) (holding that a failure to disclose exculpatory evidence does not
amount to a violation of the defendant's constitutional rights unless, in the context
of the entire record, the omitted evidence creates a reasonable doubt regarding the
verdict); *United States v. Bagley*, 473 U.S. 667 (1985) (finding that a failure to
disclose material exculpatory evidence results in constitutional error regardless of
whether the defendant requested production of such evidence, and determining
that the proper standard for evaluating suppressed evidence was whether it
suggested a "reasonable probability" that the verdict was incorrect); *Kyles v.
Whitley*, 514 U.S. 419 (1995) (determining that all suppressed evidence must be
considered together in determining whether there has been a *Brady* violation, and
finding that a failure to disclose evidence held by law enforcement but unknown to
the prosecution can still amount to a *Brady* violation). *See generally* Richard A.
Rosen, *Disciplinary Sanctions Against Prosecutors for* Brady *Violations: A Paper
Tiger*, 65 N.C. L. Rev. 693 (1987) (discussing the lack of enforcement
mechanisms to ensure compliance with *Brady*).

[9]    *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

### 4. Discovery Authorized by Statute

The Jencks Act provides that statements by government witnesses in the hands of the government must be produced, but not until after those witnesses have testified.[10] Certain statutes provide some defendants with additional discovery. For example, defendants charged with capital offenses are entitled to a list of the witnesses against them at least three days before commencement of trial.[11]

### 5. Discovery Under the Federal Rules of Criminal Procedure

Rule 16 of the Federal Rules of Criminal Procedure requires that the parties disclose certain information.[12] Upon request, the prosecution must provide

---

[10] *See* 18 U.S.C. § 3500; *see also United States v. Percevault*, 490 F.2d 126, 132 (2d Cir. 1974) (holding that trial judges have significant discretion in determining which materials are covered by the Jencks Act, but no discretion in determining when covered materials must be disclosed).

[11] *See* 18 U.S.C. § 3432.

[12] Rule 16 is best viewed as an evolving Rule. When adopted, the Advisory Committee noted that "[w]hether under existing law discovery may be permitted in criminal cases is doubtful." As a result, the Rule simply permitted the court to grant defendants leave to inspect documents that had been seized by the government. Rule 16 1944 Advisory Committee Note. By 1966, three years after *Brady*, the Advisory Committee observed that "[t]he extent to which pretrial discovery should be permitted in criminal cases is a complex and controversial issue," and expanded the scope of criminal discovery. The 1974 amendment "revised [the Rule] to give greater discovery to both the prosecution and the defense," Rule 16 1974 Advisory Committee Note. Less than one year later, the

certain statements made by the defendant; the defendant's criminal record; access to certain physical evidence; and reports related to expert, scientific, and medical evidence.[13] Significantly, the Rule does not require disclosure of statements made by government witnesses.[14]

Rule 26.2 of the Federal Rules of Criminal Procedure provides that after a witness testifies, a party may compel production of any relevant statements made by that witness. The Rule does not provide a method for discovery of statements or documents in the hands of a non-party even if they are relevant statements by a witness who has testified.

## B.    Rule 17(c) Subpoenas

Finally, there is Rule 17(c) of the Federal Rules of Criminal Procedure, which provides:

> (1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before

---

Committee expanded defendants' ability to obtain the government's witness list, noting, "[t]he Committee believes that it is desirable to promote greater pretrial discovery." Rule 16 1975 Advisory Committee Note.

[13]    *See* Rule 16(a)(1). In some instances, defendants must make reciprocal disclosures to the Government. *See* Rule 16(b)(1)-(2).

[14]    *See* Rule 16(a)(2).

trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

(2) Quashing or Modifying the Subpoena. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.[15]

Rule 17(c) was adopted as part of the Federal Rules of Criminal Procedure in 1944 and has not been amended. The Advisory Committee Note states that "[t]his rule is substantially the same as rule 45(b) of the Federal Rules of Civil Procedure,"[16] which permits parties in a civil action to obtain discovery from non-parties by way of a subpoena. This brief overview may indicate that the rule drafters initially thought Rule 17(c) would govern discovery from non-parties, while Rule 16 would govern discovery from the Government.

### 1.    Cases Addressing Rule 17(c)

In *Bowman Dairy v. United States*, the Supreme Court held that it was permissible for a criminal defendant to issue a Rule 17(c) subpoena to the government, but that because Rule 16 obligates the government to disclose certain material to the defendant, the defendant's Rule 17(c) subpoena could not exceed

---

[15]    Rule 17(c).

[16]    Rule 17(c), 1944 Advisory Committee Note.

the scope of Rule 16.[17]  The Court thus determined that "Rule 17(c) was not

intended to provide an additional means of discovery."[18]  Instead, the Court

explained that it provides a method "to expedite the trial by providing a time and

place before trial for the inspection of subpoenaed materials."[19]  Further, the

subpoenas could be used only to discover material that could be considered

"evidentiary."[20]

      In *United States v. Nixon*, the government sought to obtain records

from a non-party, specifically the President of the United States, by means of a

Rule 17(c) subpoena.[21]  Although Rule 17(c) provides only that the court may

---

[17]    *See* 341 U.S. 214, 20 (1951) ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms.").  It is worth noting that *Bowman Dairy* preceded *Brady* by twelve years.

[18]    *Id.* at 220.

[19]    *United States v. Nixon*, 418 U.S. 683, 698 (1974) (citing *Bowman Dairy*, 341 U.S. at 220).

[20]    *Bowman Dairy*, 341 U.S. at 219-20.

[21]    The subpoena was issued by the government in *United States v. Mitchell*, No. 74-110 (D.D.C.), a case in which the President was not a defendant but was named by the grand jury as an unindicted co-conspirator. *United States v. Nixon* was the proceeding brought by the President to quash the government's subpoena.

quash a subpoena "if compliance would be unreasonable or oppressive,"[22] the

Supreme Court adopted the four-part test set forth in *United States v. Iozia* for

determining when a Rule 17(c) subpoena can be used.[23]   The Court summarized

this test as "(1) relevancy; (2) admissibility; (3) specificity."[24]   "If the moving

party cannot reasonably specify the information contained or believed to be

contained in the documents sought but merely hopes something useful will turn

up, the requirement of specificity will not have been met."[25]   The Court found that

under this standard, the government's subpoena would not be quashed.[26]

---

[22]    Fed. R. Crim. P. 17(c).

[23]    13 F.R.D. 335, 338 (S.D.N.Y. 1952) (Weinfeld, J.).  "Under this test, in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699-700.

[24]    *Nixon*, 418 U.S. at 700. *Cf. Stern v. United States Dist. Court for Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000) (explaining that the four-part test is an elucidation of the "unreasonable or oppressive" requirement); *Baylson v. Disciplinary Bd. of Supreme Court of Penn.*, 975 F.2d 102, 109 (3d Cir. 1992) (same).

[25]    *Weissman*, 2002 WL 31875410, at *1.

[26]    *See Nixon*, 418 U.S. at 702.

## 2. Subpoenas Issued by Defendants

"A criminal prosecution . . . is in no sense a symmetrical proceeding."[27] It is inherent in our criminal justice system that defendants will virtually always be outmatched in investigatory resources, funds, and time to prepare for litigation. This does not offend the Constitution. "The Bill of Rights does not envision an adversary proceeding between two equal parties."[28] The principle of equality of arms may apply in certain international criminal law contexts,[29] but it has no place in our constitutional jurisprudence.[30] For better or

---

[27] *United States v. Turkish*, 623 F.2d 769, 774 (2d Cir. 1980).

[28] *Wardius v. Oregon*, 412 U.S. 470, 480 (1973) (Douglas, J., concurring).

[29] *See* Miranda Sissons & Ari S. Bassin, *Was the Dujail Trial Fair?*, 5 J. Int'l Crim. Just. 272, 280 (2007) ("Equality of arms is 'at the centre of . . . criminal procedural guarantees' and 'the most important criterion of a fair trial.'") (quoting L. Arbour, Application for Leave to Intervene as Amicus Curiae and Application in Intervention as Amicus Curiae of United Nations High Commissioner for Human Rights, *In the matter of Sentencing of Taha Yassin Ramadan*, § 23, 8 Feb. 2007). *See generally* Geert-Jan Alexander Knoops, *The Dichotomy Between Judicial Economy and Equality of Arms Within International and Internationalized Criminal Trials*, 28 Fordham Int'l L.J. 1566, 1567 (2005) (observing that equality of arms requires "that the defense in criminal cases is not unjustly put at a disadvantage compared to the position of the prosecution in terms of time and facilities to prepare its defense case, as well as having access to information material to the case," but noting that international criminal tribunals have not held equality of arms to apply to financial resources).

[30] *See* Hon. William J. Brennan, Jr., *The Criminal Prosecution: Sporting Event or Quest for Truth? A Progress Report*, 68 Wash. U. L.Q. 1, 18

worse, due process demands only that a criminal defendant receive a

constitutionally "adequate" defense, not that the parties to a criminal prosecution

be equally matched.[31]

    As discussed above, the government has far more opportunity to

obtain evidence than does a criminal defendant. The government can use grand

jury subpoenas to obtain evidence, and the Supreme Court has held that "the *Nixon*

standard does not apply in the context of grand jury proceedings . . . ."[32] Further,

where the desired material is in the hands of an agency that has a close working

relationship with the government, the government may be able to obtain the

---

(1990) (hereafter Brennan, *Progress Report*) ("Rules of fairness in a criminal trial must derive not from some effort evenly to match the sides – the government and the accused – but from careful attention to the trial's internal truth-finding function."). *Cf.* Jay Sterling Silver, *Equality of Arms and the Adversarial Process: A New Constitutional Right*, 1990 Wis. L. Rev. 1007, 1039 (calling for the recognition of a constitutional right to equality of arms, defined as "the procedural rights of each advocate to formulate and present her case").

[31]    *See Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (*per curiam*) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted); *Wise v. Smith*, 735 F.2d 735, 738 (2d Cir. 1984) ("[A]lthough counsel was no Clarence Darrow, his performance was not so lacking in competence as to fall short of the [constitutional] standard . . . .").

[32]    *United States v. R. Enters.*, 498 U.S. 292, 299-300 (1991).

material simply by informal request.[33]

It is therefore fair to ask whether it makes sense to require a

defendant seeking to obtain material from a non-party by means of a Rule 17(c)

subpoena to meet the *Nixon* standard.[34]  In fact, several commentators argue that

the standard is inappropriate.[35]  Unlike the government, the defendant has not had

---

[33]     It is obvious here that the government had already obtained some of
the taped prison telephone conversations of one of its cooperators, as it had
produced transcripts of those tapes to the defense in advance of trial.

[34]     *See* Robert G. Morvillo *et al.*, *Motion Denied: Systematic
Impediments to White Collar Criminal Defendants' Trial Preparation*, 42 Am.
Crim. L. Rev. 157, 160 n.12 (2005) (hereafter Morvillo, *Motion Denied*)
(observing that "courts have interpreted 17(c) so narrowly that it is rarely useful to
criminal defendants, and instead serves as an additional tool for the prosecution");
Peter J. Henning, *Defense Discovery in White Collar Criminal Prosecutions*, 15
Ga. St. U. L. Rev. 601, 640 (1999) ("[T]here does not appear to be an *a priori*
reason why a court cannot use a different standard than *Nixon*'s in deciding
whether to enforce a defense subpoena for records from a third party than it would
apply to the Government.").

[35]     *See, e.g.,* Peter J. Henning, *Defense Discovery in White-Collar
Criminal Prosecutions: Federal Rule of Criminal Procedure in Subpoenas*, 23-
Dec. Champion 26, 67 (1999) ("*Bowman Dairy* and *Nixon* do not forestall
completely a defendant's efforts to secure documents before trial from third
parties, but make it unnecessarily difficult by imposing a high threshold for
invoking Rule 17(c) that focuses on the evidentiary nature of the requested
documents without reference to the defense at trial."); Morvillo, *Motion Denied*, at
160 n.12 ("It is extraordinarily difficult for a defendant, who has limited ability to
investigate, to know enough about the discovery he is seeking such that he can
comply with the *Nixon* requirements."); Hon. H. Lee Sarokin & William E.
Zuckerman, *Presumed Innocent?  Restrictions on Criminal Discovery in Federal
Court Belie This Presumption*, 43 Rutgers L. Rev. 1089 (1991) (hereafter Sarokin

13

an opportunity to obtain material from non-parties either through a grand jury

subpoena or through Rule 16 discovery (which only applies to parties).

     A federal defendant's opportunities for discovery are severely

constrained.[36]  While in recent years state criminal law has moved to expand

discovery opportunities for defendants,[37] a federal criminal defendant's ability to

---

& Zuckerman, *Presumed Innocent?*).

    [36]    *See generally* Sarokin & Zuckerman, *Presumed Innocent?*, at 1089
("It is an astonishing anomaly that in federal courts virtually unrestricted
discovery is granted in civil cases, whereas discovery is severely limited in
criminal matters.").

    [37]    *See* Mary Prosser, *Reforming Criminal Discovery: Why Old
Objections Must Yield to New Realities*, 2006 Wisc. L. Rev. 541, 577 ("Debates
about the appropriate breadth of the discovery to be provided by these rules have
been ongoing for decades.  Some states have embraced broad discovery; other
states, and Congress, have chosen to maintain far more restrictive rules.") (citing
N.C. Gen. Stat. 15A-902 (2004); Ariz. R. Crim. P. 15.1 (2005); Mass. R. Crim. P.
14 (2005)) (other citations omitted); Milton C. Lee, Jr., *Criminal Discovery: What
Truth Do We Seek?*, 4 U. D.C. L. Rev. 7, 8 (1998) (noting that a majority of states
"have discovery statutes that are more progressive than the federal . . . model[]");
*see also* Jenny Roberts, *Too Little, Too Late*, 31 Fordham Urb. L.J. 1097, 1098
(2004) ("Many commentators, for many years, have called for the liberalization of
criminal discovery statutes and rules.") (citing Hon. William J. Brennan, Jr.,
*Criminal Prosecution:  Sporting Event or Quest For Truth?*, 1963 Wash. U. L.Q.
279 (1963); Brennan, *Progress Report*; Sarokin & Zuckerman, *Presumed
Innocent?*, at 1089; Roger J. Traynor, *Ground Lost & Found in Criminal
Discovery*, 39 N.Y.U. L. Rev. 228 (1964)).  *Cf. United States v. Garsson*, 291 F.
646, 649 (S.D.N.Y. 1923) (Hand, J.) ("Under our criminal procedure the accused
has every advantage.  While the prosecution is held rigidly to the charge, he need
not disclose the barest outline of his defense. . . .  Why in addition he should in
advance have the whole evidence against him to pick over at his leisure, and make

14

conduct discovery has not been re-examined.[38]

That the government has more opportunities to gather evidence is not in itself a reason to expand defendants' rights. "[I]n the context of criminal investigation and criminal trials, where accuser and accused have inherently different roles, with entirely different powers and rights, equalization is not a sound principle on which to extend any particular procedural device."[39]

"But, the Constitution recognized the awesome power of indictment and the virtually limitless resources of government investigators. Much of the Bill of Rights is designed to redress the advantage that inheres in a government prosecution."[40] Therefore, in determining whether a right should be afforded to a criminal defendant in the absence of a legislative command, the issue is whether the Constitution requires that right.

---

his defense, fairly or foully, I have never been able to see.").

[38]    *See* Douglass, *Balancing Hearsay*, at 2134 (noting that "the growth of criminal discovery – at least in federal courts – largely ended by the mid-1970s" as the impact of *Brady v. Maryland* became apparent).

[39]    *Turkish*, 623 F.2d at 774-75. *Accord* Katherine Goldwasser, *Limiting a Criminal Defendant's Use of Peremptory Challenges: On Symmetry and the Jury in a Criminal Trial*, 102 Harv. L. Rev. 808, 821 (1989) (endorsing asymmetry and arguing that "different treatment – asymmetry – pervades the system, with litigative advantage often (though not always) going to the accused").

[40]    *Wardius*, 412 U.S. at 480 (Douglas, J., concurring).

15

Criminal defendants have the right to "put before a jury evidence that might influence the determination of guilt."[41] To effect this right, a defendant must have the ability to obtain that evidence.

Determining whether a defendant's subpoena should be quashed thus requires an assessment of the extent to which the subpoena is necessary to permit the defendant to raise a defense. Generally, this is accomplished through the *Nixon* test of "(1) relevancy; (2) admissibility; (3) specificity,"[42] and indeed, a number of courts have applied the *Nixon* standard to defense subpoenas without analysis.[43] Because of the requirement of specificity, *Nixon* makes clear that a Rule 17(c) subpoena may not be used for a "general fishing expedition."[44]

### 3. Subpoenas Issued to a Non-Party

A party may issue subpoenas to another party and to a non-party. In *Bowman Dairy v. United States*, the Supreme Court held that it was permissible for a criminal defendant to issue a Rule 17(c) subpoena to the government, but that

---

[41] *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) (citations omitted).

[42] *Nixon*, 418 U.S. at 700.

[43] *See, e.g., United States v. Henry*, 482 F.3d 27, 30 (1st Cir. 2007); *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002); *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984).

[44] *Nixon*, 418 U.S. at 700 (quotation marks omitted).

16

because Rule 16 obligates the government to disclose certain material to the defendant, the defendant's subpoenas could not exceed the scope of Rule 16.[45] Further, the Court held that the subpoenas could only require production of material if the party believed in good faith that the material would be used as evidence.[46]

In *Nixon*, the Supreme Court applied *Bowman Dairy* to a Rule 17(c) subpoena issued by the government to the President of the United States. The Court avoided determining whether "the evidentiary requirement of *Bowman Dairy* . . . appl[ies] in its full vigor when the subpoena duces tecum is issued to third parties rather than to government prosecutors," finding simply that even should the full evidentiary requirement apply, the subpoena was still proper.[47]

As one court noted, "[t]he notion that because Rule 16 provides for discovery, Rule 17(c) has no role in the discovery of documents can, of course, only apply to documents in the government's hands; accordingly, Rule 17(c) may well be a proper device for discovering documents in the hands of third parties."[48]

---

[45]     *Bowman Dairy*, 341 U.S. at 219-20.

[46]     *See id.*

[47]     *Nixon*, 418 U.S. at 700 n.12.

[48]     *United States v. Tomison*, 969 F. Supp. 587, 593 n.14 (E.D. Cal. 1997).

17

Because Rule 16 only addresses discovery between the parties, if defendants seek documents from non-parties, it must be pursuant to some other rule. If this were not the case, the government could prevent defendants from obtaining material by choosing not to obtain it for itself.[49] This perverse result cannot be intended by the Federal Rules of Criminal Procedure.

## IV. DISCUSSION

### A. Propriety of the Subpoena

The government provided Tucker with transcripts of certain calls made by one cooperating witness. Tucker has represented that these transcripts indicate that the witness may have received inducements that are not disclosed in his cooperation agreement. Tucker presumably aims to use evidence of such inducements to suggest to the jury that the witness is giving false testimony.

Rule 17(c) states only that a court may quash a subpoena "if compliance would be unreasonable or oppressive." The judicial gloss that the material sought must be relevant, admissible, and specific applies where the

---

[49] *See* Barry Tarlow, *RICO Report*, 24-June Champion 55, 55 (2000) (hereafter Tarlow, *RICO Report*) (noting that "the Justice Department encourages its prosecutors to seek such tapes for their own use against defendants but 'argue[s] that such tapes are not in our possession, and that we are not obliged to obtain them in order to review them for exculpatory information.'" (quoting 10/29/96 *Memorandum*, John C. Keeney, Acting Assistant Attorney General, United States Department of Justice, Criminal Division) (alteration in original)).

18

government issues a subpoena or where a defendant issues a subpoena to the government. *Nixon* makes clear that this standard also applies where the government subpoenas a non-party.[50] But the standard is inappropriate where production is requested by (A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the defendant has an articulable suspicion that the documents may be material to his defense. A defendant in such a situation need only show that the request is (1) reasonable, construed as "material to the defense," and (2) not unduly oppressive for the producing party to respond.[51]

Under this standard, a subpoena of all telephone recordings made by cooperating witnesses while in custody would not always be appropriate because a defendant may not have articulable suspicion that the recordings would be material to the defense. In *Nixon*, the Supreme Court warned that a Rule 17(c) subpoena is not to be used for a "fishing expedition."[52] Although I conclude that the standard annunciated in *Nixon* should not apply in the instant situation, the

---

[50]     *See United States v. Nachamie*, 91 F. Supp. 2d 552, 562 (S.D.N.Y. 2000) (observing that the *Nixon* standard "made sense in the context of a Government subpoena, especially one seeking evidence from the President").

[51]     *See id.* at 563 (suggesting that this test is appropriate for all defense subpoenas directed to non-parties).

[52]     *Nixon*, 418 U.S. at 699-700.

less-stringent standard I apply requires, as a threshold matter, the element of materiality. Under this standard, Rule 17(c) subpoenas are not to be used as broad discovery devices, but must be reasonably targeted to ensure the production of material evidence.

Applying this standard, I decline to quash Tucker's subpoena. Tucker has shown that the recordings may be material to his defense, and that production would not be unreasonably onerous to the Bureau of Prisons.

Tucker's position is bolstered by the status of the proceedings. Were his request made six months before trial, the government's argument that it would be a "fishing expedition" would be much stronger. But Tucker asked this Court to issue the subpoena one business day before trial was scheduled to begin. There is no doubt that Tucker intends to use information gleaned from these recordings solely to impeach the cooperators. Impeachment of the cooperators is clearly material to Tucker's defense.

## B.    Scope

Tucker has not demonstrated that all of the Recordings are material to his defense. Tucker is seeking proof that the cooperating witnesses have been offered certain inducements by the government in exchange for their testimony. Therefore, it is extremely unlikely that relevant material would be discovered on

20

recordings created before the initial contact between the witnesses and the

government. The government is thus directed to provide Tucker and the Bureau of

Prisons with the dates on which the witnesses or their attorneys first spoke with

any agent of the government. The Bureau of Prisons shall produce all

Recordings[53] for each witness that were made on or after the relevant date.[54]

The Constitution guarantees criminal defendants the right to confront

their accusers, and "the right to cross-examination has been held to be an essential

---

[53]     Telephone calls between the witnesses and their attorneys are
exempted from this Order.

[54]     Although I am aware of no reported decisions in this circuit
permitting such discovery, there is anecdotal evidence that many courts have done
so. *See* Edward A. Tomlinson, *Use of the Freedom of Information Act for
Discovery Purposes*, 43 Md. L. Rev. 119, 148 (1984) ("Despite the courts' general
endorsement of *Iozia*, practitioners report that substantial document discovery may
be obtained under Rule 17(c) if the defendant demonstrates real need."); Tarlow,
*RICO Report*, at 55 (stating that defendants were able to obtain telephonic
recordings from the Bureau of Prisons in *United States v. Abbell*, No. 93-0470-CR
(S.D. Fla. 1997); *United States v. Young*, No. 94-451-CR (S.D. Fla. 1997); *United
States v. Houlihan*, No. 95-10278 (D. Mass. 1996); *United States v. Scarpa*, No.
94-CR-1119 (E.D.N.Y. 1996); *United States v. Orena*, Case no. 93-1366 (E.D.N.Y
1995)); *see also* 1/26/08 Letter from George Robert Goltzer, Attorney for Tucker
(citing *United States v. Cutolo*, No. 93 Cr. 1230 (E.D.N.Y.); *United States v.
Aboushi*, No. 98 Cr. 124 (E.D.N.Y.); *United States v. Wagner*, No. 00 Cr. 1078
(E.D.NY.)); 1/26/08 Letter from George Robert Goltzer (citing *United States v.
McGriff*, No. 04 Cr. 966 (E.D.N.Y.)).

purpose of the Confrontation Clause."[55] This right is meaningless if a defendant is denied the reasonable opportunity to obtain material evidence that could be crucial to that cross-examination. Where a criminal defendant has reasonable cause to believe that a cooperating witness may have been improperly induced to give inculpatory testimony, the defendant should be permitted to gather potentially material evidence.[56]

## V.    CONCLUSION

For the reasons stated above, the government's motion to quash the subpoena is denied. The Court hereby modifies the subpoena in accordance with this Opinion. Defense counsel and defense investigators are ordered to keep the Recordings and any material gleaned from the Recordings confidential to the

---

[55]      *United States v. Weiss*, 930 F.2d 185, 197 (2d Cir. 1991) (citing *Davis v. Alaska*, 415 U.S. 308, 315 (1974)).

[56]      The government asserts that because this material is intended for impeachment, it cannot be discovered prior to the testimony of the witnesses. *See* 1/25/08 Letter from Lauren M. Ouziel & Alexander J. Willscher, Assistant United States Attorneys, at 4. Given the significant quantity of recordings and the government's promise that these witnesses will testify, requiring Tucker to wait until their testimony is complete to begin reviewing the recordings would result in an unreasonable trial delay. *See United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988) ("[T]he admissibility prong of Rule 17(c) cannot be fully assessed until the corresponding witness testifies at trial. Observation of this general rule, however, is left to the sound discretion of the district court.") (citations omitted).

extent that the material is not relevant to the defense or the material contains

addresses, identifying information, financial information, or other similarly

sensitive material. Defense counsel and investigators are further instructed not to

share with the defendant or any other party any information from the Recordings

that could jeopardize the safety of the witnesses, and to return the Recordings to

the government immediately after trial.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
          February 20, 2008

23

**- Appearances -**

**For the United States:**

Lauren M. Ouziel
Alexander J. Willscher
Assistant U.S. Attorneys
United States Attorneys Office
One St. Andrew's Plaza
New York, NY 10007
(212) 637-1065/2736

**For Defendant:**

George Robert Goltzer, Esq.
200 West 57th Street, Suite 900
New York, NY 10019
(212) 608-1260

James Brian Lebow, Esq.
488 Madison Avenue, Suite 1100
New York, NY 10022
(212) 868-3311